THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES STONE, Defendant-Appellant.

First District (1st Division)   No. 1—92—3050

Opinion filed July 31, 1995.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Some criminal cases are barely defendable. This is one of those cases.

The defendant was accused of breaking into a car parked in a Jewel parking lot. A security guard testified to finding the defendant in the car, hacking away at its steering wheel with a hammer and screwdriver. The defendant was charged with burglary and possession of a stolen motor vehicle.

At trial, the theory of defense was that the defendant happened upon the car after the window had been broken, the door unlocked, the hood latch opened from the inside, and a red towing sticker placed on the car window. Because of the car's condition, the defendant assumed it had been abandoned, not stolen, and he had a right to enter it.

The defense did not impress the jury. The defendant was found guilty of both offenses. On appeal, he claims that was no defense at all. He contends his lawyer was ineffective for several reasons. He also maintains that reversible error occurred during his cross-examination and during the State's final argument. In addition, the defendant raises issues concerning his concurrent six-year sentences on the two charges.

We affirm the defendant's conviction and sentence for burglary, but vacate the conviction and sentence for possession of a stolen motor vehicle.

EVIDENCE AT TRIAL

On April 22, 1991, Wilhelminia Cunningham parked her 1989 Toyota at 88th and Lafayette, a Jewel parking lot. When she left her car the windows were rolled up, the doors were locked, and the steer-

ing wheel was in good condition. When she next saw her car the driver's side window was broken. The door was unlocked and the steering column "was all busted out." She did not give anyone permission to enter her car that day. She did not leave a hammer or screwdriver in her car. Nor was there a tow sticker on her car when she left it, although there was a tow sticker on it when she saw the car later that day.

After Ms. Cunningham left her parked car, Walter Green, a Jewel security task force officer, saw the defendant standing by Ms. Cunningham's Toyota. There was glass on the ground next to the driver's side door. The hood was up. Green did not see any tow sticker.

Green watched the defendant. He saw the defendant enter the car and begin hammering on something inside the car. Green summoned a nearby police officer. They saw defendant using a hammer to jam the screwdriver into the ignition.

Green approached the car, told the defendant to get out, and said, "Security, you are under arrest." The defendant dropped the hammer and screwdriver and got out of the car.

The defendant, as he was being handcuffed by Green, said he was trying to start the car for a friend.

The police officer summoned by Green was not called as a witness.

The defendant testified:

On direct examination, the defendant said he knew how to start an ignition without a key. He had been working on cars for the past seven years.

On the day of the incident, he was on his way to see his parole officer. He had been in prison twice for burglary and had been out of prison four months at the time of this arrest.

He saw the Toyota in the parking lot. It had a red tow sticker on the windshield. The driver's side window had been smashed. He got in the car. He did not know whose car it was. He thought the car had been abandoned and that it was going to be towed. He knew it was against the law to take something that was not his. The only thing he did was to get in the car and look around.

When he was sitting in the car, the security guard, armed with a gun, told him to get out of the car and lie on the ground. He did. He denied having or seeing a screwdriver or a hammer.

If he wanted to hot wire a car without a key, he could have done so from underneath the hood. He never tried to start the car. He denied telling the security guard he was trying to start the car for a friend.

On cross-examination, the defendant said "James Stone" was the

name he was using in this case, but that his true name is Alvin Wofford. He told the police his name is James Stone.

There were about seven or eight cars in the parking lot. The Toyota was beat up with dents and scratches on it. It was the only car with a tow sticker. The window was shattered. He thought the car was abandoned. He got into the car. Then:

"Q. [by the prosecutor]: Because you see a car being towed away, does that give you a right to go in and look and take what you want?

A. No.
***
Q. And you opened the car door, is that right?

A. No. I had got in the car and looked around and stuff.

Q. You got in the car?

A. Yes.

Q. You were sitting in somebody else's car?

A. Looking around, when the security guard came and put the gun up on me.

Q. What were you doing in the car?

A. Rambling, looking for something.

Q. To steal?

A. Yes."

The defense rested.

In rebuttal, the State offered two certified statements of conviction for burglary.

The jury found defendant guilty of burglary and possession of a stolen motor vehicle. He was sentenced as a Class X offender to concurrent six-year terms of imprisonment.

## DECISION

### INEFFECTIVENESS OF COUNSEL

The defendant makes alternative claims about the defense he received.

First, he contends his lawyer's performance was so deficient as to constitute no representation at all, citing *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.

Second, he contends defense counsel was ineffective under the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Defendant's specific complaints are: (1) his lawyer elicited from him at trial a confession to the burglary; (2) his lawyer elicited from him testimony that he could hot wire a car; (3) his lawyer elicited hearsay from the State's only eyewitness which bolstered the State's

case; (4) he failed to object to several crucial prosecutorial improprieties during the State's cross-examination of the defendant and during closing argument; (5) his lawyer told jurors in opening and closing statements that defendant probably committed the offenses charged; and (6) his lawyer was ignorant of the law concerning suppression of evidence and the definition of probable cause.

The accusations are harsh and unjustified. Defense counsel obviously recognized the evidence against his client was overwhelming. If the defense had rested without the defendant's testimony, the jury would have had only the uncontradicted testimony of Green, the security officer, and Ms. Cunningham, the car owner. There would not be much for the jury to ponder.

The defendant's only ray of hope was to convince the jury that when he entered a car he believed to be abandoned he lacked the intent to commit a crime. Only the defendant, on his way to his parole officer, after two burglary convictions, could present that defense from the witness stand. Desperate cases sometimes call for desperate measures.

To establish a claim of ineffective assistance of counsel, a defendant must prove, first, his lawyer's representation fell below an objective standard of competence, and, second, but for that failure, the outcome of the trial would have been different. *People v. Hall* (1993), 157 Ill. 2d 324, 337, 626 N.E.2d 131.

Our courts entertain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246.

The mere fact that a tactic was unsuccessful does not establish incompetence of counsel. *People v. Moore* (1993), 243 Ill. App. 3d 1045, 1055, 614 N.E.2d 152.

In *People v. Kerwin* (1994), 159 Ill. 2d 436, 445, 639 N.E.2d 539, our supreme court found defense counsel's performance "questionable." He used a strategy that "escapes the members of this court." (159 Ill. 2d at 445.) Still, the court was "unable to find that defendant has shown prejudice as required under *Strickland* and *Albanese*." 159 Ill. 2d at 445.

In fact, a court, when weighing the kind of claim this defendant makes, may proceed directly to the prejudice prong of the test for ineffective assistance and, if the requisite prejudice has not been shown, may decide the issue without analyzing the effectiveness of representation. *People v. Enoch* (1991), 146 Ill. 2d 44, 56-57, 585 N.E.2d 115.

■ We do not have to skip that first step. There is no evidence

this defense lawyer's performance fell below an objective standard of competence. He had no duty to create a defense where none existed. Nor could he concoct a better, but false, story for the defendant to tell on the stand. No citation of authority is required to restate that cardinal principle.

The purpose of the defendant's direct examination was to show that if the defendant had intended to steal the car he would not have needed to break the steering column to do it. It was on cross-examination that the defendant admitted he was looking for something to steal in the car. That answer was damaging, but the wound was self-inflicted. It was not elicited by the defendant's lawyer.

We have examined defense counsel's performance throughout the trial. He acted with vigor and imagination, although not always with sound judgment. He kept the State to its burden of proving the defendant's guilt beyond a reasonable doubt. He vigorously cross-examined the Jewel security officer. He did not press a motion to suppress evidence because there was no merit to such a motion.

There is no need to pick through each point raised by the defendant. He has not proved ineffectiveness or prejudice under the *Strickland* doctrine.

■ Nor has the defendant demonstrated his lawyer failed to subject the prosecution's case to the meaningful adversarial testing required by *Cronic*. There was not much more the lawyer could do. As the Supreme Court said:

> "Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. [Citation.] At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." *United States v. Cronic*, 466 U.S. at 656 n.19, 80 L. Ed. 2d at 666 n.19, 104 S. Ct. at 2045 n.19.

This defense lawyer's performance was not constitutionally defective.

### STATE QUESTIONS AND ARGUMENT ABOUT DEFENDANT'S ALIAS

During cross-examination of the defendant, the prosecutor elicited evidence that the defendant's real name was Alvin Wofford and that "James Stone" was an alias. The prosecutor mentioned the alias during closing argument.

Not only was the evidence irrelevant, says the defendant, but it

told the jury that defendant was known by police officers. The defendant contends the evidence deprived him of a fair trial.

We do not agree.

■ First, "[t]he use of a false name after the commission of a crime is commonly accepted as relevant on the issue of consciousness of guilt." *People v. Coleman* (1994), 158 Ill. 2d 319, 339, 633 N.E.2d 654.

Second, the defendant volunteered the information that he was known to the police. That is, on cross-examination:

> "Q. When you were arrested that day, one of the first things you did when you came into contact with the police is you lied to them and gave them a phony name?
>
> A. I gave them that name. We went to [sic] police station on 85th and Green. The officer know me from gambling and shooting dice. He said your name is Albert Wofford. And he [sic] said that's the name I am using. I just got out of the joint."

Since the jury had heard the defendant was twice convicted of burglary and was on his way to see his parole officer when the crime was committed, it probably did not come as a shock to learn he was known to police officers.

The evidence of an alias was properly admitted.

## THE STATE'S REMARKS DURING CLOSING ARGUMENT

During rebuttal, the prosecutor said:

> "Somebody is lying to you. Somebody has come up here and taken an oath to tell the truth, and has lied to you. Either Ms. Cunningham lied to you when she said she drove her car that morning and parked it in the lot, and—to go to work and it was in perfect condition and, her windows weren't damaged. Either she's lying or he's lying. Either Walter Green lied to you when he said he saw the defendant standing outside of Ms. Cunningham's car and look [sic] into the hood and getting into the car and working on the ignition with the sledgehammer and screwdriver, or he's lying.
> ***
> Who is lying? Who has reason to lie? Ms. Cunningham, Mr. Green? Or is this the guy that has reason to lie? You make up your mind."

The defendant contends this argument shifted the burden of proof to him and misstated the law.

The State's first response is that the issue was waived because there was no objection at the time of the argument. However, the issue was preserved in the defendant's post-trial motion. In addition, because the prosecutor's remarks, as characterized by the defendant,

could have the effect of denying the defendant a fair trial, the issue may be reviewed under the plain error rule. See *People v. Coleman* (1994), 158 Ill. 2d 319, 345, 633 N.E.2d 654.

In *Coleman,* the prosecutor argued:

> "[I]n order to believe the Defendant you must believe that all the civilian witnesses, all the police, all the experts, lied." *Coleman,* 158 Ill. 2d at 345.

There, as here, the prosecutor's statement was incorrect. The defendant had not contended all the State's witnesses were lying.

In the instant case, the jury could have believed the defendant without finding Ms. Cunningham was lying. She had left the car in the morning. The defendant was found in it later in the day. Things could have happened to the car in between. Defense counsel never said Ms. Cunningham was lying.

*Coleman* distinguished a prosecutor's improper misstatements of law from improper comments on the evidence. That is, if the prosecutor had told the jury it would have to find the State's witnesses were lying in order to acquit the defendant, that would be an improper and prejudicial misstatement of law. It would impermissibly shift the burden of proof to the defendant. *Coleman,* 158 Ill. 2d at 345-46. Also see *People v. Siefke* (1990), 195 Ill. App. 3d 135, 145, 551 N.E.2d 1361.

After all, the jury could believe all of the prosecution witnesses and still conclude the State had not proved its case beyond a reasonable doubt. *People v. Crossno* (1981), 93 Ill. App. 3d 808, 822, 417 N.E.2d 827; *People v. Cole* (1980), 80 Ill. App. 3d 1105, 1108, 400 N.E.2d 931.

In *Coleman,* the supreme court held that the prosecutor's improper comments on the evidence did not result in any substantial prejudice to the defendant.

■ We reach the same conclusion in this case. We cannot see how the verdict would have been any different had the improper remarks not been made. See *People v. Byron* (1995), 164 Ill. 2d 279, 295, 647 N.E.2d 946.

We do not condone the argument. Another court has said:

> "For a prosecutor to inform a jury that in order to believe the defense witnesses the jury must find that each of the State's witnesses was lying is such a misstatement of law as to prejudice the defendant and deny him a fair trial." *People v. Ferguson* (1988), 172 Ill. App. 3d 1, 13, 526 N.E.2d 525.

Also see *People v. Wilson* (1990), 199 Ill. App. 3d 792, 796, 557 N.E.2d 571.

We find the improper argument in this case did not rise to the level of reversible error.

### SENTENCING OF THE DEFENDANT

■ The defendant contends, and the State agrees, that he could not be sentenced for both burglary and possession of a stolen motor vehicle. Each charge is based on the same act. Therefore we vacate the defendant's conviction and sentence for possession of a stolen motor vehicle.

The defendant also contends he could not be sentenced as a Class X offender because the State did not signal its intention to seek a Class X sentence before trial. That argument has been laid to rest in *People v. Jameson* (1994), 162 Ill. 2d 282, 642 N.E.2d 1207. Defendant was properly sentenced as a Class X offender.

### CONCLUSION

The defendant's conviction and sentence for burglary are affirmed. His conviction and sentence for possession of a stolen motor vehicle are vacated. We remand the matter to the trial court to correct the mittimus.

Affirmed in part; vacated and remanded in part, with directions.

CAMPBELL, P.J., and BRADEN, J., concur.