In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3310

MARIO SOLORZANO-PATLAN,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

Petition for Review
of an Order of the Board of Immigration Appeals
No. A90 689 643

Argued November 9, 1999--Decided March 10, 2000

Before COFFEY, MANION and EVANS, Circuit Judges.

COFFEY, Circuit Judge.  Mario Solorzano-Patlan challenges the Board of Immigration Appeals' (BIA) decision that he was removable from the United States as an "aggravated felon" because his Illinois burglary conviction was classified as a "burglary offense," as well as a "crime of violence," for which the term of imprisonment is at least one year. See 8 U.S.C. sec.sec. 1101(a)(43)(F) & (G). Because we conclude that the BIA's interpretation of sections 1101(a)(43)(F) and (G) was erroneous, we GRANT the petition for review, VACATE the BIA's deportation order, and REMAND this case for further proceedings consistent with this opinion.

I.  BACKGROUND

On March 16, 1995, Solorzano-Patlan, a lawful permanent resident of the United States with no prior criminal record,/1 pled guilty to an information in Lake County, Illinois, charging that "without authority, [he] knowingly entered a 1994 Ford Explorer belonging to [another] with the intent to commit therein a theft."/2 (emphasis added). That same day, Solorzano-Patlan was sentenced to sixty days' imprisonment and twenty-four months of supervised probation./3

On March 31, 1998, the Illinois court revoked

Solorzano-Patlan's probation because he failed to complete his community service or pay his fines, and sentenced him to three years' imprisonment; at the same time, recommending that Solorzano-Patlan be enrolled in the Illinois "impact incarceration" program, commonly referred to as "boot camp." This recommendation was denied because the Immigration and Naturalization Service (INS) had placed a detainer on Solorzano-Patlan making him ineligible for the "impact incarceration" program, and he was incarcerated at the Shawnee Correctional Center./4

While he was serving his three-year sentence, the INS issued Solorzano-Patlan a Notice to Appear, thereby initiating removal proceedings against him. See 8 U.S.C. sec. 1229. The Notice to Appear charged that Solorzano-Patlan was subject to removal from the United States based on the INS's determination that his 1995 Illinois burglary conviction was classified as an aggravated felony. See 8 U.S.C. sec. 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

On December 16, 1998, the Immigration Judge (IJ) conducted removal proceedings to determine the question of Solorzano-Patlan's deportability. Solorzano-Patlan appeared before the IJ and admitted only the factual allegations contained in the Notice to Appear, but argued that his burglary conviction did not rise to the level of an "aggravated felony," and should not be classified as such, because it was neither a "burglary offense" under 8 U.S.C. sec. 1101(a)(43)(G) nor a "crime of violence" under 8 U.S.C. sec. 1101(a)(43)(F).

The IJ rejected Solorzano-Patlan's arguments, and concluded, without analyzing the specific characteristics of Solorzano-Patlan's offense, that his 1995 Illinois burglary conviction, by the very title of the offense, satisfied the "burglary offense" definition of aggravated felony. Also, the IJ only looked to the "generic elements of the offense" and found that Solorzano-Patlan's conviction satisfied the "crime of violence" definition of aggravated felony because, according to the IJ, "burglary of an auto ordinarily presents risk that physical force would be used against property." Thus, finding that Solorzano-Patlan had committed an aggravated felony, the IJ terminated Solorzano-Patlan's status as a legal permanent resident and ordered him deported to Mexico.

Solorzano-Patlan appealed the IJ's decision to the BIA. On August 31, 1999, the BIA affirmed the IJ's decision, and concluded that Solorzano-

Patlan's violation of the Illinois burglary statute "falls easily within the definition of a 'burglary offense.'" The BIA further concluded that Solorzano-Patlan committed a "crime of violence" because, according to the BIA (which relied on Fifth Circuit caselaw), "[t]he burglary of a vehicle involves a substantial risk that physical force may be used against persons or property."/5 The BIA went on to hold that the IJ correctly decided that Solorzano-Patlan was an aggravated felon, and dismissed Solorzano-Patlan's appeal. Solorzano-Patlan petitions for review.

## II.  ANALYSIS

Under The Immigration and Nationality Act (INA) "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. sec. 1227 (a)(2)(A)(iii). Additionally, the transitional rules set forth in the 1996 Illegal Immigration Reform and Immigrant Responsibility Act, section 309(c)(4), state that appeals of final orders of deportation entered after October 30, 1996, shall not be permitted "in the case of an alien who is inadmissible or deportable by reason of having committed . . . [an aggravated felony]." Because we have the authority to determine jurisdiction, we may review whether Solorzano-Patlan has committed an aggravated felony under 8 U.S.C. sec. 1227(a)(2)(A)(iii). See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999). Consequently, both our jurisdiction to hear this case and the merits of the appeal turn on the question of whether Solorzano-Patlan is an aggravated felon, a decision we review de novo. Id. at 604-05.

In this case, it is uncontested that Solorzano-Patlan is an alien convicted under an Illinois statute entitled burglary. Thus, the question is whether Solorzano-Patlan's conduct which resulted in a conviction pursuant to 720 Ill. Comp. Stats. 5/19-1(a) is an "aggravated felony" as that term is defined in 8 U.S.C. sec. 1227(a)(2)(A)(iii)./6 The INS argues that Solorzano-Patlan's burglary conviction satisfies the definitions of two "aggravated felony" offenses: "burglary offense" in 8 U.S.C. sec. 1101(a)(43)(G) and "crime of violence" in 8 U.S.C. sec. 1101(a)(43)(F).

## A. The Definition of "Burglary Offense" in 8 U.S.C. sec. 1101(a)(43)(G)

The INA defines "aggravated felony" as including a "burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. sec. 1101(a)(43)(G). It is important to note that Congress did not define the term "burglary

offense" in the INA and that individual states use different and various definitions to describe what conduct does and does not constitute the crime of burglary in their respective jurisdictions./7 Notwithstanding this, the INS argues that "[w]here petitioner was convicted of the crime of burglary, his offense falls squarely under the statute. No additional analysis should be required." This is to say that, according to the INS, Solorzano-Patlan's Illinois conviction is a "burglary offense," and thus an aggravated felony, simply because he was convicted under an Illinois statute entitled "burglary." Because the Supreme Court has disapproved of this categorical approach in similar cases, see Taylor v. United States, 495 U.S. 575 (1990), we reject the INS's reading of 8 U.S.C. sec. 1101(a)(43)(G); although Solorzano-Patlan's offense is classified as a "burglary" under Illinois law, it does not necessarily follow that his offense is a per se "aggravated felony" under 8 U.S.C. sec. 1227(a)(2)(A)(iii)./8

In Taylor, the Supreme Court stated, although in the context of a section 924(e) enhancement, that

[i]t seems to us to be implausible that Congress intended the meaning of "burglary" . . . to depend on the definition adopted by the State of conviction. That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct "burglary."

For example, Michigan has no offense formally labeled "burglary." It classifies burglaries into several grades of "breaking and entering." See Mich. Comp. Laws sec. 750.110 (1979). In contrast, California defines "burglary" so broadly as to include shoplifting and theft of goods from a "locked" but unoccupied automobile. See Cal. Penal Code Ann. sec. 459 (West Supp. 1990) . . . .

* * *

Without a clear indication that . . . Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses, we do not interpret Congress' omission of a definition of "burglary" in a way that leads to odd results of this kind.

495 U.S. at 590-91 (emphasis added).

As stated previously, Solorzano-Patlan pled

guilty in Illinois to burglary, pursuant to 720 Ill. Comp. Stats. 5/19-1(a), after he was charged with "knowingly enter[ing] a 1994 Ford Explorer belonging to [another without authority] with the intent to commit therein a theft." (emphasis added). This Illinois conviction, classified as a burglary, prompted the INS to initiate deportation proceedings against Solorzano-Patlan and argue that he was deportable because he was convicted of a burglary offense and was, therefore, an aggravated felon.

But we can see that the INS's argument is flawed when examining the charging papers in this case. In this case, Solorzano-Patlan admitted only to the facts contained in the burglary charge before the IJ and specifically contested the INS's claim that he was an aggravated felon based on those facts. Moreover, the charging papers state that he entered the vehicle with the intent to commit a theft, not with the intent to commit a felony, as the statute gave the government the option to charge./9

By merely reviewing the statutes in the states comprising the Seventh Circuit, not to mention the other states across the country, it is easy to understand why the Supreme Court has refused to allow federal statutory interpretation to be based on the various definitions of criminal activity in the state of conviction. If Solorzano-Patlan had been convicted in Indiana, it is most likely he would have been charged under Indiana Code sec. 35-43-4-2(a) (1999) (emphasis added), which is entitled "Theft" and reads: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft . . . ." Therefore, if Solorzano-Patlan had been convicted in Indiana, the INS would presumably not have espoused the position that Solorzano-Patlan's conduct fell under the "burglary offense" definition of an aggravated felony because Solorzano-Patlan would not have been convicted of burglary, but rather theft.

If we examine Wisconsin criminal law under the same factual situation, it is even more understandable why Congress did not intend to rely solely on the respective jurisdictions' definitions of criminal conduct. If Solorzano-Patlan had committed his offense in Wisconsin, he would have been charged under Wisconsin Statute sec. 943.11, which is entitled "Entry Into a Locked Vehicle" and reads: "Whoever intentionally enters the locked and enclosed portion or compartment of the vehicle of another without consent and with the intent to steal therefrom is guilty of a Class A misdemeanor." Furthermore, a

Class A misdemeanor is only punishable by "a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both." Wis. Stat. sec. 939.51(3)(a) (1999). Therefore, in Wisconsin, Solorzano-Patlan would only have been charged with a misdemeanor, and therefore he would not have been eligible for deportation.

Because states define criminal conduct in a variety of ways, the Supreme Court held that the term "burglary" must be read in its "generic sense" as "having the basic elements of unlawful entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 598-99 (emphasis added); cf. Black's Law Dictionary 194, 1424 (6th ed. 1990) (defining a "building" as a "[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, and the like," and a "structure" is defined as "an edifice or building of any kind").

The need for a uniform interpretation of "burglary" in 8 U.S.C. sec. 1101(a)(43)(G) is as great as the need for a uniform interpretation of "burglary" in 18 U.S.C. sec. 924(e)(2) (B)(ii). See Iris Bennett, The Unconstitutionality of Nonuniform Immigration Consequences of "Aggravated Felony" Convictions, 74 N.Y.U. L. Rev. 1696 (1999). Thus, we conclude that "burglary offense" in 8 U.S.C. sec. 1101(a)(43)(G) means "burglary" in its "generic sense" and, therefore, according to Taylor, must have the basic elements of unlawful entry into, or remaining in, a building or structure, with intent to commit a crime. Cf. United States v. Guerrero-Cruz, No. 98-50685, 1999 WL 1128658 (9th Cir. Dec. 7, 1999) (finding the California statutory definition of "burglary" too broad and employing the Taylor definition in interpreting 8 U.S.C. sec. 1101(a)(43)(G)). Therefore, the INS interpreted burglary in too broad a manner and, in the future, it would be well advised to look at the charging papers in order to ensure that these basic elements are satisfied before it initiates the serious ramifications of removal proceedings based on an alleged "burglary offense."

Because Solorzano-Patlan burglarized a motor vehicle and not a "building or structure," we hold that his 1995 Lake County, Illinois, conviction under 720 Ill. Comp. Stats. 5/19-1(a), is not a "burglary offense" within the meaning of 8 U.S.C. sec. 1101(a)(43)(G). Accordingly, the BIA erred in using section 1101(a)(43)(G) as a basis for Solorzano-Patlan's removal.

B. The Definition of "Crime of Violence" in 8 U.S.C. sec. 1101(a)(43)(F)

The INS also argues that Solorzano-Patlan's burglary of a motor vehicle constitutes a "crime of violence" and, therefore, supports the BIA's decision to deport him from this country. The INS follows the formalistic approach adopted by the Fifth Circuit, see, e.g., United States v. Ramon-Garcia, 95 F.3d 369, 371 (5th Cir. 1996), and argues that Solorzano-Patlan's burglary conviction is necessarily a crime of violence because burglary "by its nature" involves "substantial risk that physical force . . . may be used." On the other hand, Solorzano-Patlan argues that the INS must make an individualized analysis of whether his conduct carried a substantial risk that force would be used against persons or property.

The INA defines "aggravated felony" as including "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. sec. 1101(a)(43)(F). "Crime of violence," in turn, is defined in relevant part as an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. sec. 16(b)./10

The Illinois statute under which Solorzano-Patlan was convicted, defines "burglary" broadly, encompassing both conduct that does involve a substantial risk that physical force may be used and conduct that does not involve a substantial risk that physical force may be used. See 720 Ill. Comp. Stats. 5/19-1(a); compare People v. Frey, 467 N.E.2d 302, 303 (Ill. App. Ct. 1984) (affirming the burglary conviction of a defendant who took a sledgehammer from the open bed of an unattended pickup truck) with State v. Stone, 653 N.E.2d 1311, 1312 (Ill. App. Ct. 1995) (affirming the burglary conviction of a defendant who smashed the driver's side window and "busted out" the steering column of a Toyota sedan in order to hot-wire the car). Because different levels of criminal conduct will result in a conviction under 720 Ill. Comp. Stats. 5/19-1(a), the statute is a "divisible statute," and "[w]hen the statutory definition of a criminal offense encompasses conduct that does not constitute a crime of violence as well as conduct that does constitute a crime of violence, an [IJ] may not simply categorize all conduct covered by the offense as crime of violence conduct." Xiong, 173 F.3d at 605; see also United States v. Nelson, 143 F.3d 373, 374-75 (7th Cir. 1998) (rejecting a per se rule in determining whether defendant's conviction for burglary was a "crime of violence" under U.S.S.G. sec. 2K2.1(a)(6)); United States v. Fife, 81 F.3d 62, 64 (7th Cir. 1996) ("looking

beyond the name of the law" in determining whether defendant's conviction for "armed violence" was a violent felony under 18 U.S.C. sec. 924(e)); In re Sweetser, BIA Int. Dec. 3390, 1999 WL 311950 (May 19, 1999) ("The statute's divisibility . . . allows a court to go beyond the mere fact of conviction.").

   Consequently, the IJ erred in limiting his review to the language and title of the statute because, in our opinion, it is impossible to classify Solorzano-Patlan's offense by merely reading the statutory language. The IJ should have also reviewed and analyzed the charging papers, including the complaint, in order that he might, before he makes a decision as to whether Solorzano-Patlan should be deported from this country, determine whether the conduct for which Solorzano-Patlan was convicted of involved a "substantial risk that physical force . . . [may] be used." Xiong, 173 F.3d at 604.

   Accordingly, we GRANT Solorzano-Patlan's petition for review, VACATE the deportation order of the BIA dated August 31, 1999, and REMAND for further proceedings consistent with this opinion.

/1 Solorzano-Patlan entered the United States in 1980 and became a lawful permanent resident in 1989, when he was about twelve. Also, he is the father of a one-year-old U.S. citizen child, and is engaged to marry the child's mother.

/2 720 Ill. Comp. Stats. 5/19-1(a) provides, "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building, house trailer, watercraft, aircraft, motor vehicle as defined in the Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft." (emphasis added).

/3 Solorzano-Patlan was also sentenced to perform 125 hours of public service work, assessed a fine of $200, and ordered to pay $610 in restitution.

/4 See 730 Ill. Comp. Stats. 5/5-8-1.1(b)(8) ("In order to be eligible to participate in the impact incarceration program . . . The Department may also consider . . . whether the committed person has any outstanding detainers or warrants . . . .").

/5 We note that it is rather obvious that some physical force is necessary in factual situations such as this. For example, one must insert and turn a key to release the lock as well as turn the handle to open a car door, and one must then

use force to pull the door open. We address the issue of the amount of force necessary to trigger this section later in the opinion.

/6 Solorzano-Patlan also contends that his original term of imprisonment was less than one year and that, absent the INS detainer, he would have been eligible for "boot camp." The problem with this argument is that Solorzano-Patlan was sentenced to the three-year maximum after his probation was revoked, and the relevant inquiry is whether the possible maximum sentence that could have been imposed is at least a year. Because it is uncontested that Solorzano-Patlan's conviction carried a possible sentence of at least a year (he received three), we need not address this argument any further.

/7 As we shall see, the states within the Seventh Circuit: Illinois, Indiana, and Wisconsin, all use different criteria to categorize basically the same conduct. That is, burglary in one state is not burglary in another state.

/8 In contrast, a per se rule might be appropriate for vehicular burglaries of occupied vehicles under 720 Ill. Comp. Stats. 5/12-11.1 ("vehicular invasion").

/9 See generally Hughey v. United States, 495 U.S. 411, 422 (1990) (lenity principles "demand resolution of ambiguities in criminal statutes in favor of the defendant"); Liparota v. United States, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

/10 We note that the force necessary to trigger this section is more than merely opening a car door. We are of the opinion that the force necessary to constitute a crime of violence, must actually be violent in nature. See Black's Law Dictionary 1147 (6th Ed. 1990) (defining physical force as "[f]orce applied to the body; actual violence."). "In coming to this conclusion, we emphasize that the relevant inquiry is whether the conduct involved a substantial risk of physical force, not whether physical force was actually used." Xiong, 173 F.3d at 607.