# United States Court of Appeals
## For the First Circuit

---

No. 99-2187

EDWIN EMILE,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, Stahl and Lynch,

<u>Circuit Judges</u>.

---

<u>Abira Ashfaq</u>, PAIR Project, for petitioner.
<u>Nelda C. Reyna</u>, Office of Immigration Litigation, Department of Justice, Civil Division, with whom <u>David W. Ogden</u>, Assistant Attorney General, Civil Division, and <u>Hugh G. Mullane</u>, Senior Litigation Counsel, were on brief for respondent.

---

March 30, 2001

---

BOUDIN, Circuit Judge. Edwin Emile, a native and citizen of Haiti, immigrated to the United States in 1971. In 1988, Emile was convicted in a Massachusetts state court of possession of a controlled substance. In 1990, he was again convicted, this time of indecent assault and battery on a child under fourteen, Mass. Gen. Laws ch. 265, § 13B (1998); the sentence was 350 days, of which 55 were served. In 1996, he was convicted once again of assault and battery and sentenced to a year in prison. Out of these convictions grew three efforts by the Immigration and Naturalization Service ("INS") to deport Emile.

The INS first acted against Emile in June 1990 based on the 1988 drug conviction, but the proceedings were terminated after the conviction was vacated by the state court. In August 1997, the INS began a second proceeding to remove Emile, this time for the 1996 assault and battery conviction, see 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996). However, after the immigration judge had ordered Emile deported, Emile's sentence was reduced to eleven months--a month shy of the minimum sentence for a deportable "crime of violence," id. § 1101(a)(43)(F), and thus the Board of Immigration Appeals (the "Board") remanded the matter to the immigration judge for reconsideration.

-3-

On remand, the INS abandoned its request for removal based on the 1996 conviction and substituted a new basis:  the 1990 conviction for indecent assault and battery on a child under fourteen.  Although this conviction had earlier been known to the INS, it became more useful for removal purposes when Congress amended the Immigration and Nationality Act ("INA") in 1996 by adding "rape, or sexual abuse of a minor" to murder in the first item on the list of deportable "aggravated felony" offenses.  See Illegal Immigration Reform and Immigrant Responsibility Act of 1966, Pub. L. No. 104-208, § 321(a)(1), 110 Stat. 3009-546, - 627 (codified at 8 U.S.C. § 1101(a)(43)(A) (Supp. II 1996)).  These new offenses, which Congress did not further define, make the alien subject to automatic deportation regardless of the length of sentence imposed.

After a succession of hearings in 1999, the immigration judge found that the 1990 conviction qualified as "sexual abuse of a minor" warranting deportation.  The immigration judge relied in part on a police incident report, admitted over Emile's objection, that purported to describe the offense conduct based on the statement of Emile's then stepdaughter, who was thirteen at the time of the incident.  She said that one night when her mother was out, Emile, while inebriated, had made sexual remarks, touched her chest under her nightgown, and

-4-

touched her groin area although not the skin (for she was wearing underwear). This was, she said, Emile's second effort to fondle her.

On review, the Board upheld the deportation order, using somewhat different reasoning than the immigration judge. It agreed that Emile's violation comprised "sexual abuse of a minor," relying in part on a definition borrowed from federal criminal laws, see 18 U.S.C. §§ 2241-44 (1994 & Supp. II 1996). It rejected Emile's claim that the police report should not be considered, but--unlike the immigration judge--it found the report unnecessary to the outcome. The Board also said that Emile was not eligible for discretionary relief from deportation. On this appeal, Emile contests both the deportation and the refusal of his application for waiver; and we begin with the deportation order.

The Board held Emile deportable on the ground that he had been convicted of "sexual abuse of a minor" within the meaning of the 1996 amendment to the INA. Two different, albeit related, questions thus arise: one is what is meant by the quoted phrase, and the other is whether Emile's conviction falls within the rubric. The former is a routine although difficult question of statutory interpretation; the latter takes us into

-5-

the murky world of <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575, 600 (1990), and its progeny.

<u>The Definition</u>. The 1996 amendment, adding "sexual abuse of a minor" to the list of crimes warranting automatic deportation, does not define the crime or otherwise explicitly cross-reference a specific federal criminal statute. <u>Compare</u> 8 U.S.C. § 1101(a)(43)(A) (Supp. II 1996), <u>with</u>, <u>e.g.</u>, <u>id.</u> § 1101(a)(43)(B) (1994) ("a drug trafficking crime (as defined in section 924(c) of title 18)"). The Board says that it may therefore construe the phrase itself under delegated authority from the Attorney General, 8 C.F.R. § 3.1(d)(1) (2000). The INS has regularly taken this position. <u>See</u> <u>In re Bahta</u>, Interim Dec. 3437, 2000 WL 1470462 (BIA 2000); <u>In re Rodriguez-Rodriguez</u>, Interim Dec. 3411, 1999 WL 731793 (BIA 1999).

Although enforcement agencies are not normally given deference in construing criminal statutes, <u>see</u> <u>Sutherland</u> v. <u>Reno</u>, 228 F.3d 171, 174 (2d Cir. 2000), the 1996 amendment implements the immigration laws and does not impose a criminal penalty. We agree that, under governing Supreme Court precedent, the INS' reading of the phrase is entitled to deference and, if reasonable, must be upheld. <u>See</u> <u>INS</u> v. <u>Cardoza-Fonseca</u>, 480 U.S. 421, 448 (1987). The Board has declined to supply a complete definition, but it made clear here

-6-

that it would generally regard conduct that (with the appropriate federal nexus) would violate the federal sexual abuse statutes, where the victim was a minor, as "sexual abuse of a minor" within the meaning of the 1996 amendment.

The federal criminal code contains a chapter titled "sexual abuse," 18 U.S.C. §§ 2241-48, comprising four different sets of crimes: aggravated sexual abuse (section 2241), sexual abuse (section 2242), sexual abuse of a minor or ward (section 2243), and abusive sexual contact (section 2244). The Board here focused on "abusive sexual contact," which makes criminal certain deliberate "sexual contact" under defined circumstances. "Sexual contact" is itself defined in another section as intentional touching, "either directly or through the clothing," of another person's genitals or other specified body parts "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Id. § 2246(3).

It seems to us reasonable, and well within the Board's discretion, to regard such conduct, by an adult against a minor, as presumptively within the 1996 amendment. Emile argues that such conduct should not, by itself, be classed as sexual abuse of a minor because it does not fit the only crime so named (section 2243) or--for that matter--either of the other two crimes in the chapter whose section headings include the phrase

-7-

"sexual abuse" (sections 2241 and 2242). The three crimes so denominated are all quite serious:  even the least (sexual abuse of a minor) may result in up to fifteen years' imprisonment. By contrast, the crime of abusive sexual contact, in Emile's circumstances, would have carried a maximum penalty of two years, see 18 U.S.C. § 2244(a)(3).[1]

But the arguments the other way are also weighty. Neither the conduct described in section 2244(a)(3) nor the two-year maximum sentence suggests a trivial crime.  The federal chapter captions all of the four crimes, including section 2244, under the heading "sexual abuse."[2]  And, given the interpretive latitude afforded to the agency, it is hard to exclude from the 1996 amendment adult conduct that is directed against a minor and would unquestionably violate section 2244(a)(3) if it occurred on federal property.  See Lara-Ruiz v. INS, No. 99-

_____

[1]Because Emile's stepdaughter was under the age of 16 and he was more than 4 years older, section 2244(a) made his offense punishable by up to 2 years in prison.  18 U.S.C. § 2244(a)(3). Absent such an aggravating age differential, the maximum penalty would have been 6 months.  Id. § 2244(b).  We do not want to be understood as endorsing the view that every possible violation of the federal sexual abuse chapter would automatically translate into a deportable offense.

[2]Elsewhere in the federal criminal code, see 18 U.S.C. § 3509(a)(8) (1994), the term "sexual abuse" is used broadly enough that it indubitably covers Emile's conduct, but it is debatable how relevant this provision may be.  See In re Rodriguez-Rodriguez, 1999 WL 731793 (Guendelsberger, dissenting).

2868, 2001 WL 215953 (7th Cir. Mar. 6, 2001); cf. United States v. Zavala-Sustaita, 214 F.3d 601, 605 (5th Cir.), cert. denied, 121 S. Ct. 434 (2000).

Thus far we have ignored legislative history because there is very little directly in point. The conference report on the 1996 amendment does little to explain the critical phrase. See H.R. Conf. Rep. No. 104-828, subtit. B, § 321, available at 1996 WL 563320 (Sept. 24, 1996). However, Emile's counsel relies on the concurrent addition of a new statutory basis for removal for crimes of "child abuse," 8 U.S.C. § 1227(2)(E)(i) (Supp. II 1996), and the House bill, H.R. 2202, 104th Cong. (1996), to argue that only very serious sexual abuse was intended to be covered by the 1996 amendment adding sexual abuse of a minor as a basis for automatic deportation.

But the House bill itself listed "abusive sexual contact" after rape, aggravated sodomy, aggravated sexual abuse, and sexual abuse, in its proposed new category of "crimes of sexual violence." H.R. 2202, § 218 (a)(F). The provision draws no distinction as to minors, but otherwise adopts word-for-word and in order the headings of sections 2241, 2242, and 2244, suggesting that Congress intended this new category to encompass conduct that would be criminal under those provisions. Indeed, even the dissenters in In re Rodriguez-Rodriguez recognized that

"sexual abuse of a minor," as proposed in the 1996 amendment, encompassed "sexual contact" offenses. 1999 WL 731793 (Guendelsberger, dissenting).

The Taylor Issue. This brings us to the second and equally difficult question in this case. Emile was not prosecuted under federal law; he was convicted under a Massachusetts statute, Mass. Gen. Laws ch. 265 § 13B. Even if we assume that "abusive sexual contact" by an adult directed to a minor constitutes "sexual abuse of a minor" under the 1996 amendment to the INA, the question remains whether Emile was "convicted" of such an offense. After all, section 13B says nothing directly about "abusive sexual contact" or "sexual abuse of a minor"; the state crime is indecent assault and battery on a child under fourteen, and it is not further defined in the statute, although state case law provides a considerable gloss.

At first blush, it might seem easy to bypass the state statute since we "know" what Emile did. But there are two problems: first, we "know" the nature of his actual conduct only by relying on the police report, whose admissibility is disputed, and second, a complex body of federal law developed under the Taylor decision limits the extent to which courts are allowed, at least in criminal sentencing, to look at actual conduct--as opposed to looking at the statute of conviction as

-10-

construed by the state courts, e.g., United States v. Preston, 910 F.2d 81, 86 & n.5 (3d Cir. 1990), cert. denied, 498 U.S. 1103 (1991).  Emile makes arguments on both points.

Taylor, in its classic form, limits consideration to the coverage of the state statute rather than the actual conduct of the offender (but, as we will see, exceptions exist).  Taylor construed a federal criminal statute--the career offender provisions of the criminal code, 495 U.S. at 577-78 (construing 18 U.S.C. § 924(e)(1988)).  One could well argue that the Board was not obliged to apply Taylor in construing the INA.  However, without much discussion, most circuits have assumed that Taylor applies.[3]

We need not pursue the issue because the Board has itself cited Taylor in the past, without quibble, in applying the INA provisions that define deportable offense.[4]  And while

---

[3]See Drakes v. Zimski, --- F.3d --- , 2001 WL 170872, at *2 (3d Cir. Feb. 20, 2001); United States v. Zavala-Sustaita, 214 F.3d 601, 603 (5th Cir.), cert. denied, 121 S. Ct. 434 (2000); Solorzano-Patlan v. INS, 207 F.3d 869, 873-75 (7th Cir. 2000); United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999), cert. denied, 121 S. Ct. 1130 (2001); United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993); United States v. Rodriguez, 979 F.2d 138, 140-41 (8th Cir. 1992).

[4]See, e.g., In re Bahta, 2000 WL 1470462; In re Perez, Interim Dec. 3432, 2000 WL 726849 (BIA 2000); In re Rodriguez-Rodriguez, 1999 WL 731793; In re Sweetser, Interim Dec. 3390, 1999 WL 311950 (BIA 2000); In re Palacios-Pinera, Interim Dec. 3373, 1998 WL 911545 (BIA 1998); In re Alcantar, 20 I. & N. Dec. 801, 812 (BIA 1994).

the Board did not mention Taylor by name in this case, it effectively followed Taylor by relying upon the Massachusetts statute rather than on Emile's conduct as described in the police report.  In substance, the Board concluded that section 13B focused upon conduct that would constitute sexual abuse of a minor under the 1996 amendment.

By its terms, section 13B condemns only "an indecent assault and battery on a child under the age of fourteen." Emile points out that in the abstract, section 13B has been described as including indecent touching directed against a minor regardless of the actor's "specific intent," and not necessarily "for the purpose of sexual arousal, gratification, or offense," see Commonwealth v. Conefrey, 640 N.E.2d 116, 122-23 (Mass. App. Ct. 1994), rev'd on other grounds, 650 N.E.2d 1268, 1273 (Mass. 1995).  He concludes that the statute may therefore include less serious behavior that is not intended to have a sexual character.

The Supreme Judicial Court has expressly referred to a conviction under section 13B as a "sex offense."  Doe v. Sex Offender Registry Bd., 697 N.E.2d 512, 515 (Mass. 1998).  The Massachusetts legislature has elsewhere classified a conviction under section 13B as a "sex offense involving a child" and a "sexually violent offense."  Mass. Gen. Laws. ch. 6, § 178C

(1998).  We have reviewed dozens of cases and are unpersuaded that section 13B has been applied by Massachusetts courts to conduct other than intentional touchings of a sexual character directed against minors.  See, e.g., Commonwealth v. Knap, 592 N.E.2d 747, 748 (Mass. 1992); Commonwealth v. Nuby, 589 N.E.2d 331, 332 (Mass. App. Ct. 1992).[5]

Emile's claim that "intent" is not required stems from Conefrey, which held that it was not error under section 13B to refuse an instruction that the defendant's purpose must be sexual arousal or the like and that it was sufficient that the indecent touching was "intentional and deliberate."  640 N.E.2d at 122.  But the federal statute on sexual contact also does not require an intent to arouse; it is enough to intend to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3) (emphasis added).  Based on our reading of the state cases, we see no evidence that anything much less or different would be required under section 13B.[6]

---

[5]That serious conduct is involved might also be inferred from the penalties provided:  up to ten years' imprisonment for a first offense and up to life in prison for a second.  Mass. Gen. Laws ch. 265, § 13B.

[6]While Conefrey called a violation of section 13B a "strict liability" crime, see also Knap, 592 N.E.2d at 749, we see this as nothing more than the imposing of an objective rather than a subjective test of what is indecent.

Similarly, if there is daylight between the conduct component of section 13B and the federal statute, we think it is relatively slight. There is no indication that, as Emile suggests, an arm around the waist would sustain a section 13B conviction, cf. Commonwealth v. Mosby, 567 N.E.2d 939, 941-42 (Mass. App. Ct. 1991). It may be that there are some "touchings" that would violate section 13B that might not be "sexual contact" under the federal statute, but the discrepancy does not appear to be very great. Compare id. at 941 ("thigh"), with 18 U.S.C. § 2246(3) ("inner thigh").

Thus, we think that unlawful sexual contact with a minor approximating the federal definition is presumptively within the amended INA's scope, and that in neither intent nor conduct does section 13B go much beyond the federal definition or beyond a lay understanding of sexual abuse of a minor. Cf. United States v. Baron-Medina, 187 F.3d 1144, 1146-47 (9th Cir. 1999). If so, a conviction under section 13B strongly indicates that the defendant is deportable under the 1996 amendment. We refrain, however, from giving an open-ended endorsement to this view. If and when a defendant is convicted under section 13B for conduct shown to be markedly less serious, and is sought to be deported based on that conviction, we will consider the issue afresh. Compare Zavala-Sustaita, 214 F.3d at 605.

-14-

However section 13B is read, <u>Taylor</u>'s requirements would still be satisfied, at least in this circuit.  <u>Taylor</u> could have been taken as a rigid prohibition on looking at actual conduct; but the Supreme Court itself carved exceptions, 495 U.S. at 602 (the charging instrument and jury instructions), and the lower courts have tended to be still more generous.[7] Pertinently, this circuit has allowed the use of police reports in the criminal sentencing context to identify actual conduct where the state statute encompasses conduct within and without the federal definition.  <u>See</u> <u>United States</u> v. <u>Shepard</u>, 231 F.3d 56, 70 (1st Cir. 2000).  In this case, Emile's <u>conduct</u>, as described in the police report, easily fits within the 1996 amendment.

This brings us to Emile's claim that it violates due process to rely on the police report.[8]  Since deportation is civil, the Confrontation Clause does not apply.  <u>See</u> <u>Austin</u> v. <u>United States</u>, 509 U.S. 602, 608 n.4 (1993).  As for due process, which remains as a constraint, <u>see</u> <u>Hernandez</u> v. <u>Reno</u>,

---

[7]<u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Palmer</u>, 68 F.3d 52, 59 (2d Cir. 1995) (plea colloquy transcript and agreement); <u>United States</u> v. <u>Harris</u>, 964 F.2d 1234, 1236-37 (1st Cir. 1992) (presentence report subsequent to guilty plea).

[8]Under Board rules, hearsay is not automatically banned in deportation proceedings, so the report was admissible as an administrative matter whether or not it fit within a recognized hearsay exception.  <u>See</u> 8 C.F.R. § 240.7(a).

238 F.3d 50, 55 (1st Cir. 2001), nothing in the report made it peculiarly suspect and nothing prevented Emile, who had ample knowledge of the matter, from contesting the description of the offense.  Thus, we see no fundamental unfairness in considering the report.

Discretionary Relief.  Lastly, Emile argues that the Board erred in refusing to consider his application for discretionary relief from deportation.  Because Emile was convicted of an aggravated felony, we have no authority to consider on direct review any other claim once we conclude that he was legitimately so classified.  See INA § 242(a)(2)(C) (codified at 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996)); Sousa v. INS, 226 F.3d 28, 34 & n.6 (1st Cir. 2000).  A district court may consider on habeas legal claims for which an alien has no means of securing direct review, see id.; Mahadeo v. Reno, 226 F.3d 3, 9 (1st Cir. 2000), and our dismissal on this issue is without prejudice to such claims.

The petition for review is denied as to the Board's determination that Emile is removable as an aggravated felon; and it is dismissed without prejudice to a habeas application insofar as it contests the Board's refusal to consider discretionary relief.

It is so ordered.