In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1383

United States of America,

Plaintiff-Appellee,

v.

Alejandro Alvarez-Martinez,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 CR 51-1--George W. Lindberg, Judge.

Argued November 14, 2001--Decided April 12, 2002

   Before Coffey, Easterbrook, and Diane P.
Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  In this
appeal, Alejandro Alvarez-Martinez
challenges the sentence he received for
the offense of being present in the
United States, without the express
consent of the Attorney General, after
having previously been deported as a
convicted felon. See 8 U.S.C. sec.
1326(a). The district court concluded
that Alvarez's prior Illinois conviction
for burglary of a vehicle constituted an
"aggravated felony" for purposes of the
Sentencing Guidelines, and thus increased
his base offense level of 8 by 16 more
levels under U.S.S.G. sec. 2L1.2(b).
Alvarez argues that this was error,
because in Illinois burglary of a vehicle
is not on its face a crime of violence.
We conclude that, in the circumstances of
this case, the earlier offense qualified
as an aggravated felony and we therefore
affirm.

I

   Although Alvarez is still a Mexican
citizen, he came to the United States
with his parents while he was a young
child, before he started grade school. On
August 11, 1990, he broke into a locked
car and stole the stereo system. He was
caught and charged in a criminal

information with burglary, in violation of what is now 720 ILCS 5/19-1(a). He pleaded guilty to that charge and was sentenced to six years' imprisonment. Two years into that sentence, the Immigration and Naturalization Service (INS) initiated deportation proceedings against him. This laid the groundwork for his deportation in 1993. Upon his release from custody, he was arrested and formally warned that re-entry into the United States after deportation, in the absence of express permission from the Attorney General, would violate 8 U.S.C. sec. 1326, a criminal statute. Alvarez signed an acknowledgment (in Spanish) that he had received this warning. He was deported to Mexico in September 1993 as an aggravated felon.

These warnings evidently did not have much of an in terrorem effect: four months later, in January 1994, Alvarez returned to the United States illegally. He made his way back to Elgin, Illinois, where he was arrested on January 22, 1994, on charges of battery and resisting a peace officer. In short order, he was charged on February 22, 1994, in a criminal information with violating 8 U.S.C. sec.sec. 1326(a) and (b), by respectively being present in the United States without the Attorney General's permission and also after arrest and deportation for commission of an aggravated felony.

Alvarez agreed to a written plea agreement, and, in keeping with its terms, he pleaded guilty to the charge in the information. In the agreement, he reserved the right to argue that his 1991 Illinois burglary conviction was not, as a matter of law, an "aggravated felony" for purposes of U.S.S.G. sec. 2L1.2. Although Alvarez was scheduled to be sentenced in September 1994, in late August he fled, and a warrant was issued for his arrest. He remained a fugitive until July 2000, when the Elgin police again found him and arrested him on a variety of other charges. Sentencing proceeded, and as we note in more detail below, the district court rejected his argument about sec. 2L1.2, added 16 levels to the base level of eight, added two more for obstruction of justice because of his flight, and refused to make any downward adjustments, giving him a final offense level of 26. With 14

criminal history points, he fell in Criminal History Category VI. The court sentenced him at the bottom of that range to 120 months' imprisonment.

II

Before moving to the merits of Alvarez's appeal, we must confirm that we have proper appellate jurisdiction over it. The problem relates to the timeliness of his notice of appeal, and more specifically to the propriety of the district court's order granting him an extension of time under Fed. R. App. P. 4(b)(4). The district court entered its judgment on January 30, 2001, which meant that his notice of appeal had to be filed by February 9, 2001, in order to be timely. See Fed. R. App. P. 4(b)(1), 26(a)(2). Alvarez did not file by that date. Instead, on February 13, his lawyer moved for an extension of time under Fed. R. App. P. 4(b)(4), which provides that:

[u]pon a finding of excusable neglect or good cause, the district court may-- before or after the time has expired, with or without motion and notice--extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

The government did not oppose the motion. At a hearing on February 15, the court granted it with no explanation. Alvarez filed his notice of appeal that very day.

Our review of the district court's decision is only for abuse of discretion. See United States v. Brown, 133 F.3d 993, 996 (7th Cir. 1998). Even with that generous standard of review, the present case strikes us as a borderline one. On the one hand, the reasons counsel offered for his failure to file by February 9 do not thoroughly dispel the notion that he just miscalculated the date. Counsel told the district court that he did not think Alvarez wanted to appeal, that he did not meet with Alvarez after sentencing, that he thought Alvarez had mental problems, and that counsel himself was coping with two deaths in his family. Counsel did not speak to Alvarez until February 12, when he confirmed that Alvarez wanted to appeal. On the other hand, the district court reasonably might have inferred from this account that the real problem was

not carelessness in calculating the date, but a more serious potential problem of communication with the client. The court was undoubtedly well aware that if the lawyer had abandoned Alvarez at this critical juncture, Alvarez would have been entitled to file a motion under 28 U.S.C. sec. 2255 claiming ineffective assistance of counsel through a failure to file a notice of appeal. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). If the court thought the likelihood of success was sufficiently high on such a motion, it reasonably might have concluded that good cause had also been shown to extend the time for filing a notice of appeal in the ordinary course, thus avoiding the need for a time-consuming ancillary proceeding.

It would have been helpful if the district court had given its reasons for ruling as it did, but we see no need to remand for a statement of reasons if they can be discerned from the record we have. We are satisfied that this is not a simple case of miscalculation, which would have required us to dismiss the appeal for lack of appellate jurisdiction. See United States v. Marbley, 81 F.3d 51, 52 (7th Cir. 1996); United States v. Guy, 140 F.3d 735 (7th Cir. 1998). And while it is not at all excusable for a lawyer to fail to file a timely notice of appeal in a criminal matter, especially if the only reason is preoccupation with other matters, see In re Plunkett, 82 F.3d 738, 742 (7th Cir. 1996), we must also take into account the Supreme Court's guidance in the analogous area of bankruptcy appeals governed by Bkr. Rule 9006. See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993); see also Stutson v. United States, 516 U.S. 193 (1996) (recognizing possible applicability of Pioneer Investment toappeals governed by Fed. R. App. P. 4(b)). The overriding message of Pioneer Investment is that the district court has broad powers under rules like Bkr. Rule 9006 or Fed. R. App. P. 4 to grant extensions of time. By granting an extension here, the district court allowed counsel to mend a potentially disastrous lapse in representation. The problem was raised promptly to the court; the notice of appeal was filed immediately after the extension of time was granted; and the opposing party

suffered no prejudice. We conclude that the district court did not abuse its discretion and that the appeal is thus properly before us.

III

On the merits, Alvarez asks us to find that the district court erred in concluding that his 1991 burglary was an "aggravated" felony for purposes of sec. 2L1.2 of the Sentencing Guidelines. There is no doubt that this characterization makes a considerable difference to him. Under that guideline, a simple violation of 8 U.S.C. sec. 1326 carries an offense level of 8. If the defendant's earlier deportation was because of a conviction of a felony, four more levels are added; if it was for conviction of an aggravated felony, 16 more levels are added. The extra 12 levels translate into something like an 80-month difference in the sentence, depending on where in the authorized range the actual sentence falls. (We note for the sake of completeness that we are conducting this analysis, as the district court did, under the 1993 version of the guidelines. Any objection to the use of that manual instead of the 2000 manual (the version in effect at the time of Alvarez's sentencing, and the one we would have ex pected to be used) has been forfeited. Furthermore, although sec. 2L1.2 was amended effective November 1, 2001, there is no argument before us that the amended version should apply, and thus we make no comment on how it would affect Alvarez's case.)

One type of aggravated felony is a "crime of violence." That term is defined by 18 U.S.C. sec. 16 as follows:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Alvarez's original conviction, which led to his original deportation, was under 720 ILCS 5/19-1 ("Burglary"), which

reads:

A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle[,] railroad car, or any part thereof, with intent to commit therein a felony or theft.

The government concedes that the statute does not include as an element the "use, attempted use, or threatened use of physical force against the person or property of another."

Alvarez argues that because the formal elements of the Illinois crime concededly do not include violence, it cannot be a crime of violence for purposes of the federal statute and guidelines as a matter of law. The government has two re sponses: first, it argues that burglary is always a crime of violence, because there is always a "substantial risk that physical force against the . . . property of another may be used"; second, it argues that in this case Alvarez actually used violence and thus the 16-level enhancement was proper for him. We address these in turn.

We have no quarrel with the proposition that the label a state attaches to a criminal statute may not end our inquiry. The Supreme Court held in Taylor v. United States, 495 U.S. 575 (1990), that (at least for purposes of 18 U.S.C. sec. 924(e)) the meaning of the term "burglary" in the federal statute did not depend on the definition adopted by the state of conviction. Id. at 590. Instead, Congress wanted a uniform definition, which the Court concluded came from the "generic sense" in which the term "burglary" is now used in the criminal codes of most states. Id. at 598. Indeed, we have already held that "burglary" for purposes of deportation under 8 U.S.C. sec. 1101(a)(43)(G) must be understood in its generic sense. See Solorzano-Patlan v. INS, 207 F.3d 869 (7th Cir. 2000). In Solorzano-Patlan, Solorzano burglarized a motor vehicle and not a building; we concluded that the burglary of the vehicle was not a "burglary offense" for purposes of the deportation statute. Id. at 874-75. We also rejected the INS's argument that burglary of a vehicle is always and necessarily a crime of

violence. Id. at 875-76. We realize that other decisions have found that particular statutes do define a burglary crime that is necessarily a crime of violence, but each statute is somewhat different, and it is our task to work with the Illinois law. Compare Lopez-Elias v. Reno, 209 F.3d 788, 792 (5th Cir. 2000); United States v. Guzman-Landeros, 207 F.3d 1034, 1035 (8th Cir. 2000).

To say that the Illinois crime of burglary of a vehicle is not always a crime of violence is not the same as saying that it never is, which is what Alvarez argues. In fact, as Solorzano-Patlan recognizes, the Illinois statute encompasses some conduct that is properly seen as a crime of violence and some that is not. 207 F.3d at 875. This takes us to the second argument in the case: is there particular information on which we may properly rely that tells us which kind of burglary Alvarez committed?

Logically, we see three options: first, we might look only to the face of the charging document; second, we might look to uncontested or stipulated information in addition to that document; and finally, we might look to all available evidence, resolving disputes through an evidentiary hearing if necessary. This is a familiar issue in this court, whichconsidered an analogous problem in United States v. Shannon, 110 F.3d 382 (7th Cir. 1997) (en banc). In Shannon, the court opted to continue adhering to the principle that "the characterization of a previous conviction offered to enhance the defendant's federal sentence is to be based on the facts charged in the indictment (or, as here, the information), without a deeper inquiry into the circumstances of the offense." Id. at 384. Shannon also recognized that deviation from that principle was justified when two conditions existed: first, that it was impossible otherwise to determine the proper classification of the offense, and second, that the deviation did not require a hearing to resolve contested factual issues. Id. We think this outlines the proper approach for the case before us as well, even though the specific statutes and charges are different. See Xiong v. INS, 173 F.3d 601, 604-07 (7th Cir. 1999).

Looking only to the charging document here leaves us unable to determine whether Alvarez's prior conviction was a "crime of violence," for the reasons we have already explained. The first of the two conditions we described is therefore satisfied: without further examination, we will not be able to determine the proper classification of the offense. What about the second? We know that the original Presentence Report set forth the details of Alvarez's 1991 crime, thinking that this was the proper approach after consultation with the Sentencing Commission Hotline. The PSR indicated that the Elgin, Illinois, Police Department arrest record showed that:

[O]n August 11, 1990, the defendant was charged with breaking into a vehicle and stealing a stereo system. The report indicates that the vehicle's doors were locked and the passenger side window had been pried open to gain entrance.

Alvarez did not file any objection to that version of the PSR, because he decided to abscond instead. After he had been caught and returned for resumed sentencing proceedings, his lawyer objected to the PSR's recommendation for the enhanced sentence on the legal ground that the Illinois statute did not describe a crime of violence. Counsel did not object specifically to the facts in the report, however; to the contrary, at the sentencing hearing on January 19, 2001, counsel conceded on Alvarez's behalf that Alvarez had broken into the vehicle and taken the stereo. Moreover, in his opening brief to this court Alvarez did not consider the question whether this is one of those cases in which factual information beyond that which appears in the charging documents may be considered. He addresses this point in his reply brief, but arguments raised for the first time in a reply brief are too late.

We conclude that Alvarez's acquiescence in the factual account presented in the PSR gives us the equivalent of a stipulation of facts. Alvarez has argued only that those stipulated facts cannot lead to the legal conclusion urged by the government, namely, that the 16-point enhancement was proper. We disagree. The existence of the de facto stipulation means that no evidentiary hearing will be

necessary on this point, and the additional facts allow us to decide how to characterize Alvarez's offense. The act of prying open the window of a locked vehicle qualifies as a use of physical force against the property of another, as 18 U.S.C. sec. 16(a) uses the term--this was not a case in which the car owner carelessly left her doors unlocked and returned to find her collection of compact discs stolen, all with no damage to the car.

We therefore Affirm the judgment of the district court.