In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2396

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCOS MARTINEZ-GARCIA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 271--James B. Moran, Judge.

Argued JANUARY 9, 2001--Decided September 28, 2001

Before FLAUM, Chief Judge, BAUER and
COFFEY, Circuit Judges.

COFFEY, Circuit Judge.  On June 7, 1999,
Marcos Martinez-Garcia (hereafter
"Garcia") pled guilty to an indictment
charging him with being present in the
United States after having been deported,
contrary to 8 U.S.C. sec. 1326. At
sentencing, the district court determined
that Garcia's deportation in 1992 was
accomplished "subsequent to the
commission of an aggravated felony," thus
authorizing an enhanced prison term under
the Immigration and Naturalization Act
(INA). The judge sentenced Garcia to 57
months imprisonment. He appeals. We
affirm.

I.  BACKGROUND

   Garcia is a Mexican national admitted
into the United States as a legal
permanent resident in 1985. He resided in
Waukegan, Illinois, from the time of his
entry into this country until his
deportation in March, 1992. On or about
June 21, 1988, at the age of 17, Garcia
was arrested and charged as an adult in a
two-count Information with theft and
burglary in Lake County Illinois Circuit
Court./1 Count I of the Information,
the burglary charge, stated in pertinent
part as follows:

[T]he defendant, without authority,

knowingly entered a motor vehicle of Silvens Mathews, a 1979 Chevy pick-up, with the intent to commit therein a theft.

On December 27, 1988, Garcia pled guilty to the burglary charge as recited above, was sentenced to 30 months probation, and the theft charge was dropped. However, about six months later, for reasons not disclosed in the record, Garcia's probation was revoked and he was sentenced to a three year prison term under supervision of the Illinois Department of Corrections. On March 17, 1992, Garcia was deported from the United States./2

On July 6, 1998, Immigration and Naturalization agents, while conducting random searches of county jails for illegal aliens, discovered Garcia in the Lake County Illinois Jail. After it was determined that Garcia was illegally in the United States, he was prosecuted for illegal re-entry. On April 13, 1999, a federal grand jury returned an indictment charging Garcia with being in the United States illegally after deportation, contrary to 8 U.S.C. sec. 1326. On June 7, 1999, he entered a plea of guilty and was sentenced to 57 months imprisonment.

At the time of sentencing, the district court found that Garcia's 1988 burglary conviction should have been classified as an "attempt" to commit a "theft offense" under the INA, also qualifying him as an "aggravated felon" pursuant to 8 U.S.C. sec. 1326(b)(2) and U.S.S.G sec. 2L1.2(b)(1)(A). After the trial judge made a three-level reduction for Garcia's acceptance of responsibility, the total offense level was in the Guideline range of 57 to 71 months./3 The judge declined Garcia's request for a downward departure because the three year prison sentence ultimately imposed for the 1988 Illinois conviction rendered a downward departure unavailable under Application Note 5 of U.S.S.G. sec. 2L1.2.

II.  ISSUES

Garcia raises three issues on appeal: (1) that pursuant to the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), the sentencing judge committed error by not requiring the government to charge in the indictment that his 1988

Illinois conviction was an "aggravated felony"; (2) alternatively, that the district court erred in determining that the 1988 conviction was an "attempted theft offense," and thus an "aggravated felony," pursuant to 8 U.S.C. sec. 1326(b)(2), and 8 U.S.C. sec. 1101(a)(43); and (3) that the trial court erred when concluding that it lacked the authority to order a downward departure from the 16 point enhancement Garcia received for committing an aggravated felony, pursuant to Application Note 5 of U.S.S.G sec. 2L1.2.

## III.  DISCUSSION

A. The District Court's Authority to Determine the Existence and Nature of a Prior Conviction.

Garcia initially argues that the district court was without authority to make the finding that his 1988 burglary conviction was an "aggravated felony" for purposes of the maximum penalty enhancement of 8 U.S.C. sec. 1326. He argues that under Apprendi v. New Jersey, 530 U.S. 466 (2000), a prior criminal conviction, if it increases the maximum statutory sentence, must be treated as an element of the offense, included in the indictment, and established by the government beyond a reasonable doubt./4 Garcia has failed to present us with any case law, nor are we aware of any, requiring that the government charge his prior conviction in the indictment. Garcia acknowledges the direct conflict between his argument and the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), and contends that Almendarez-Torres was overruled or limited by the Supreme Court's subsequent decision in Apprendi. We disagree. In Apprendi, the Supreme Court summarized its holding as follows:

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

Apprendi, 530 U.S. at 490 (emphasis added).

As the quoted passage makes clear, the Court in Apprendi held that "prior

convictions" need not be charged nor sub mitted to a jury. Indeed, the Court made clear that Almendarez-Torres was a "narrow exception to the general rule" announced in Apprendi. Id. at 490. This ruling preserved the prior holding in Almendarez-Torres that under 8 U.S.C. sec. 1326, prior convictions are a sentencing factor, not an element of the crime, and need not be charged. Almendarez-Torres, 523 U.S. at 226-27; see also Dahler v. United States, 259 F.3d 763,765 (7th Cir. 2001) (holding that Apprendi did not overrule Almendarez-Torres).

Thus, under Almendarez-Torres, prior convictions need not be included in the indictment, regardless of whether the existence of the prior conviction increases the maximum term of imprisonment. Almendarez-Torres, 523 U.S. at 235. The trial judge did not commit error on this issue and Garcia's Apprendi challenge to his sentence is rejected.

B. Commission of an Aggravated Felony

Garcia next alleges that the court erred in finding that his 1988 Illinois conviction was an "attempted theft offense" that qualified as an "aggravated felony" for purposes of the penalty enhancement provisions of 8 U.S.C. sec. 1326(b)(2), and U.S.S.G sec. 2L1.2(b)(1)(A). The question of what constitutes an "aggravated felony" is reviewed de novo. Solorzano-Patlan v. INS, 207 F.3d 869, 872 (7th Cir. 2000).

Congress, in enacting the INA, listed specific crimes as well as other acts of criminal behavior that qualify as "aggravated felonies," including the following:

(43) The term "aggravated felony" means . . . (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [sic] at least one year. . . (U) an attempt or conspiracy to commit an offense described in this paragraph.

8 U.S.C. sec. 1101(a)(43)(G) and (U) (emphasis added).

Since a "theft offense" is listed as an "aggravated felony" in the INA, an "attempt" to commit a "theft offense" is

also an aggravated felony. The trial court judge concluded that the facts of Garcia's 1988 state conviction properly fell within the parameters of an attempted theft offense. At Garcia's sentencing hearing, the judge stated, "no matter how you parse theft, attempted theft, no matter how small it is, and no matter how a state classifies it, is something that Congress classified as an aggravated felony if the penalty was more than a year." We agree.

1. "Burglary Offense" Under the INA

Initially we note that Garcia's 1988 burglary conviction, in spite of the title given to the crime, does not fulfill the elements of a "burglary offense" as set forth in the INA under our recent decision in Solorzano-Patlan v. INS, 207 F.3d 869, 874 (7th Cir. 2000), in which we held that "burglary" in its generic sense requires unlawful entry into a building or structure, and does not encompass unlawful entry into a motor vehicle. Garcia's burglary conviction, like Solorzano-Patlan's, involved unlawful entry into a motor vehicle, not a building or structure, and therefore cannot qualify as a "burglary offense" under the INA. However, in this case the trial court, after considering and referring to our decision in Solorzano-Patlan, properly held that Garcia's 1988 conviction was an "attempt" to commit a "theft offense," not a "burglary offense" or an "attempt" to commit a "burglary offense."

2. "Theft Offense" Under the INA.

In Solorzano-Patlan, we established a framework for determining when a defendant's prior criminal conviction can properly be classified as an "aggravated felony" under the INA. In determining whether a criminal conviction falls within one of the statutory predicate offenses designated as aggravated felonies by Congress, the uniform application of federal law requires that we identify and apply the "generic" elements of the felonious activity involved, rather than the inconsistent titles, elements and definitions used in the statutes of the various states. Solorzano-Patlan, 207 F.3d at 873.

We have previously defined a "theft offense" for purposes of the INA as requiring the taking of property (exercise of control over property), without the owner's consent, with the intent to temporarily or permanently deprive the owner of the rights and benefits of ownership. Hernandez-Mancilla v. INS, 246 F.3d 1002, 1009 (7th Cir. 2001). Garcia's guilty plea to the 1988 burglary charge went only to an admission that he unlawfully entered a vehicle with the intent to commit a theft, but neither his plea nor the charging document encompassed an admission or charge that he completed the act of taking property from the vehicle./5

3. "Attempt" to Commit a "Theft Offense" Under the INA.

We next consider whether Garcia's conviction qualifies as an "attempt" to commit a "theft offense" under the INA. As previously noted, the INA's definition of aggravated felony includes "an attempt or conspiracy to commit an offense described in [8 U.S.C. sec. 1101(a)(43)]." 8 U.S.C. sec. 1101(a)(43)(U). "Attempt" is not defined in the INA. Consistent with our two most recent cases dealing with this question, Solorzano-Patlan and Hernandez-Mancilla, we are bound to apply a generic definition of "attempt" that is unconstrained by the titles, definitions or elements assigned to it by the various states. See Solorzano-Patlan, 207 F.3d at 874. In answering this question we also rely on the reasoning of the Second Circuit in Sui v. INS, 250 F.3d 105 (2d Cir. 2001), in which the court recently analyzed the meaning of "attempt" as used in 8 U.S.C. sec. 1101(a)(43)(U).

In Sui, the Second Circuit initiated its analysis of the meaning of the word "attempt" by holding that "the label given to the offense by the charging jurisdiction is not alone determinative of its status as an aggravated felony." Sui, 250 F.3d at 114. We agree with the Second Circuit, because reliance on the varying state laws would inevitably lead to inconsistent results in the interpretation of the INA, as we made clear and condemned in Solorzano-Patlan. As previously noted, Congress obviously never intended the definitions of the INA's predicate offenses to vary solely

according to the conflicting titles applied in the criminal laws of the various states. See Solorzano-Patlan, 207 F.3d at 874; Taylor v. United States, 495 U.S. 575, 579-80 (1990).

Accordingly, the Sui court derived a generic meaning of "attempt," based on common law and the Model Penal Code, consisting of (1) the intent to commit a crime, and (2) a substantial step toward its commission. Sui, 250 F.3d at 115. This definition of "attempt" is frequently employed in this circuit and derived from the common law. We adopt this definition for purposes of 8 U.S.C. sec. 1101(a)(43)(U). See United States v. Romero, 189 F.3d 576, 589 (7th Cir. 1999) (An "attempt" requires the intent to commit a crime and a substantial step toward its commission.); United States v. Saunders, 166 F.3d 907, 915 (7th Cir. 1999); United States v. Barnes, 230 F.3d 311, 314 (7th Cir. 2000); United States v. Rovetuso, 768 F.2d 809, 821 (7th Cir. 1985) (reciting the definition after noting the absence of a comprehensive federal statutory definition of "attempt.")

With this definition in mind, it is clear that the conduct admitted by Garcia in his plea of guilty to Count I of the 1988 Information fits within the parameters of an "attempt" to commit a "theft offense." The 1988 Information charged Garcia with the intent to commit a theft, and also charged him with taking a substantial step toward the commission of the theft (unlawfully entering a motor vehicle without the owner's consent). In pleading guilty to this charge, Garcia admitted engaging in conduct which we determine to fit within the parameters of an attempt to commit a theft offense under the INA, and the district court therefore did not err in concluding that the defendant's 1988 conviction was an aggravated felony.

C. The District Court's Application of the Sentencing Guidelines

Garcia's final contention is that the sentencing judge misconstrued the breadth of his downward departure authority under U.S.S.G sec. 2L1.2, and Application Note 5 to that section. The Guideline provides a base offense level of 8 for a

conviction of illegal re-entry after deportation. U.S.S.G sec. 2L1.2(a). An upward adjustment of 16 levels is mandated where the deportation was subsequent to a conviction for an aggravated felony. U.S.S.G. sec. 2L1.2(b)(1)(A). Application Note 5 to the Sentencing Guideline states that a downward departure from the 16 level adjustment may be warranted if the defendant's aggravated felony conviction meets each of three enumerated criteria. The note provides as follows:

Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. sec. 2L1.2, Application Note 5.

At sentencing, Garcia requested a downward departure based upon Application Note 5. The judge denied his request, holding that Garcia failed to meet each of the three criteria delineated in Application Note 5 because his 1988 conviction resulted in a term of imprisonment in excess of one year when his probation was revoked and he received a three year sentence. On appeal, Garcia contends that the judge erred in his determination that each of the criteria referred to in Application Note 5 must be satisfied in order for a downward departure to be authorized.

Garcia's argument is precluded by our recent decision in United States v. Palomino-Rivera, 258 F.3d 656, 660 (7th Cir. 2001).

In promulgating Application Note 5, the [Sentencing] Commission defined the heartland of sec. 2L1.2 by exclusion; a downward departure from the sixteen-point enhancement is authorized only if the defendant satisfies all three criteria enumerated in Application Note 5 . . . Any other interpretation would render the application note "effectively meaningless." [United States v. Tappin, 205 F.3d 536, 541 (2d Cir. 2000).]. We

shall not "second-guess the conscious policy choices of Congress and the Sentencing Commission, an activity in which we are not at liberty to engage." [United States v. Marquez-Gallegos, 217 F.3d 1267, 1271 (10th Cir. 2000)]. Palomino-Rivera, 2001 WL 818791 at *3-4 (emphasis added).

The holding quoted above is dispositive of Garcia's argument on appeal. Because his 1988 conviction resulted in imposition of a prison term in excess of one year, his conviction did not meet each of the criteria enumerated in Application Note 5, and the district court did not err in determining that a downward departure from the prescribed sentencing range would be improper.

III. CONCLUSION

We find no merit to Garcia's challenges to his sentence, and the judgment of the district court is AFFIRMED.

FOOTNOTES

/1 Persons 17 years of age and older may be prosecuted as adults under Illinois law. 705 ILCS 405/5-120.

/2 Shortly thereafter, Garcia illegally re-entered the United States and continued a pattern of illegally re-entry followed by deportation. In the six years following his initial deportation he was deported three additional times but was not criminally prosecuted for any of these crimes.

/3 The judge, following the Guidelines, sentenced Garcia to the shortest period of incarceration available, and ordered that the sentence be served concurrently with a four year state term of imprisonment Garcia was then serving.

/4 Garcia did not raise the Apprendi issue before the trial court, thus we apply the plain error standard to any argument raised for the first time on appeal. United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000); Johnson v. United States, 520 U.S. 461, 466-67 (1997); Fed.R.Crim.P. 52(b).

/5 As previously noted, Count I of the Information charged that "[T]he defendant, without authority, knowingly entered a motor vehicle of Silvens Mathews, a 1979 Chevy pick-up, with the intent to commit therein a theft." In pleading guilty to this charge, Garcia admitted the conduct and

facts as alleged in the Information. United States v. Shannon, 110 F.3d 382, 384 (7th Cir. 1997).