# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-2397

JOSE M. VACA-TELLEZ, also
known as JOSE VACA, also
known as JOSE BACA,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney
General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
A35-623-368

_____

ARGUED APRIL 4, 2008—DECIDED SEPTEMBER 2, 2008

_____

Before POSNER, KANNE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Jose Manuel Vaca-Tellez is a
citizen of Mexico who was admitted to the United States
as a lawful, permanent resident alien in 1978. In 2002,
he committed a felony that led to the commencement of
removal proceedings by U.S. Immigration and Customs
Enforcement ("ICE"). An Immigration Judge ("IJ") ordered

that Vaca-Tellez be removed to Mexico, and the Board of Immigration Appeals ("BIA") affirmed that decision. Vaca-Tellez petitioned this court for review. Because there were no legal errors in the decision, we deny the petition for review.

**I.**

In July 2002, the State of Illinois charged Vaca-Tellez with burglary in violation of 720 ILCS 5/19-1(a). The criminal information specified that Vaca-Tellez "committed the offense of burglary in that he, without authority, knowingly entered into a motor vehicle, to wit: a 1995 Chevrolet, property of Suzanna Alaniz, with the intent to commit the offense of theft, therein, in violation of Chapter 720, Act 5, Section 19-1(a)[.]" This crime is characterized under Illinois law as a Class 2 felony. *See* 720 ILCS 5/19-1(b). For this offense, a sentencing judge may impose, alone or in combination, a period of probation, a fine, restitution, and a term of imprisonment, among other things. 730 ILCS 5/5-5-3(b). Any term of imprisonment for a Class 2 felony may not be less than three years nor more than seven years. 730 ILCS 5/5-8-1(a)(5). In August 2002, Vaca-Tellez pled guilty to that charge and was sentenced to eighteen months' probation.[1] Vaca-Tellez's adherence to the conditions of his probation was unfortu-

---

[1] Although the Certified Statement of Conviction/Disposition from the Circuit Court of Cook County does not specify the charge to which Vaca-Tellez pled guilty, the charge of burglary detailed in the information was the only pending charge that appears on that document.

nately short-lived. On September 16, 2002, a scant six weeks after the guilty plea, he was charged with violating his probation. A charge of violating probation was entered again on November 12, 2002, and a warrant was issued for his arrest. A little more than three years passed before law enforcement again caught up with Vaca-Tellez. On January 31, 2006, Vaca-Tellez pled guilty to the probation violation.[2] Illinois law provides that, for a violation of probation, a court may continue the existing sentence or impose any sentence that was available under section 5/5-5-3(b). 730 ILCS 5/5-6-4(e). The court revoked Vaca-Tellez's probation and sentenced him to a term of three years' imprisonment, the minimum term allowed for the crime of burglary.

Approximately one year later, ICE commenced removal proceedings against Vaca-Tellez by filing a Notice to Appear ("NTA") with the Immigration Court. The NTA specified that Vaca-Tellez was subject to removal because he had been convicted of an aggravated felony as defined by 8 U.S.C. §§ 1101(a)(43)(G) and 1101(a)(43)(U). The original NTA charged that, on January 31, 2006, Vaca-Tellez had been convicted "for the offense of intent to commit the offense of theft" in violation of 720 ILCS 5/19-

---

[2] The Certified Statement again did not specify the charge, but at that point in the proceedings, the probation violation was the only charge pending. The court revoked the probation the same day the guilty plea was entered, and sentenced Vaca-Tellez to three years' imprisonment, both strong indicators that Vaca-Tellez admitted guilt to violating the conditions of probation from his sentence for burglary.

1(a). With the agreement of the parties, the IJ amended the NTA to state that, on August 6, 2002, Vaca-Tellez was convicted of the offense of burglary in violation of 720 ILCS 5/19-1(a). Vaca-Tellez admitted that he had been convicted of burglary but denied that he was subject to removal as an aggravated felon. The IJ relied on this court's decision in *United States v. Martinez-Garcia*, 268 F.3d 460 (7th Cir. 2001), in holding that a burglary with intent to commit theft under the Illinois statute was an aggravated felony because it was an "attempted theft offense." The IJ rejected Vaca-Tellez's contention that his conviction did not qualify as a felony because he originally was sentenced only to probation. The IJ noted that the Illinois statute allowed the state court judge to re-sentence the defendant on the original charge for any violation of probation, and the state court had done so here, imposing a three-year term of imprisonment. The BIA dismissed Vaca-Tellez's subsequent appeal, agreeing with the IJ that the Illinois crime of burglary with intent to commit theft was an aggravated felony under *Martinez-Garcia*. The BIA also agreed that Vaca-Tellez's three-year sentence for violating his original sentence of probation satisfied the statutory requirement for a sentence in excess of one year on the original conviction. Vaca-Tellez petitions this court for review.

## II.

In his petition, he contends that the IJ incorrectly construed his conviction for burglary to an automobile as an aggravated felony. He argues that the BIA

mischaracterized his conviction as one for attempted theft. He also asserts that *Martinez-Garcia* is distinguishable and not determinative of his claim. The government contends that we lack jurisdiction over Vaca-Tellez's petition because 8 U.S.C. § 1252(a)(2)(C) deprives this court of jurisdiction to review petitions filed by aliens who are subject to removal as aggravated felons. We begin by addressing our jurisdiction to review the claim.

Our jurisdiction is limited because the "INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, strips the judiciary of authority to review any final order of removal against an alien who is removable by reason of having committed an aggravated felony." *Gattem v. Gonzales*, 412 F.3d 758, 762 (7th Cir. 2005). *See also* 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A)(iii). The BIA determined that Vaca-Tellez committed an aggravated felony but we nonetheless retain the authority to determine our jurisdiction. *Eke v. Mukasey*, 512 F.3d 372, 378 (7th Cir. 2008); *Gattem*, 412 F.3d at 762; *Solorzano-Patlan v. INS*, 207 F.3d 869, 872 (7th Cir. 2000). Moreover, the REAL ID Act of 2005 amended section 1252(a)(2)(C) of the INA to allow this court to review constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Eke*, 512 F.3d at 378 (stating the REAL ID Act "put an end to any doubt" that we are authorized to consider the question whether DHS correctly determined that a petitioner's convictions were aggravated felonies for the purposes of the immigration laws). Thus, to the extent that the BIA's holding turned on its construction of the immigration statute at issue, it presents a question of law that Congress has given us the

power to address. *Gattem*, 412 F.3d at 762. *See also Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997) ("[w]hen judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists."). We therefore have jurisdiction to determine whether, as a matter of law, Vaca-Tellez is removable as an aggravated felon, and in particular whether the crime for which he was convicted in Illinois qualifies him for that status. *Eke*, 512 F.3d at 378; *Gattem*, 412 F.3d at 762. *See also Moreno-Cebrero v. Gonzales*, 485 F.3d 395, 398 (7th Cir. 2007) (where a petition from a person ordered removed as an aggravated felon presents a straight-forward question of law, the court has jurisdiction over the petition). Our review of the determination that Vaca-Tellez committed an aggravated felony is *de novo*. *Eke*, 512 F.3d at 378; *Martinez-Garcia*, 268 F.3d at 464.

Vaca-Tellez first contends that his removal order is not supported by clear and convincing evidence that he is subject to removal as an aggravated felon as that term is defined by 8 U.S.C. §§ 1101(a)(43)(G) and (U) (hereafter "Subsection G" and "Subsection U"). Under Subsection G, an aggravated felony consists of "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." Subsection U adds that an attempt or conspiracy to commit any of the listed offenses, including a theft offense, also qualifies as an aggravated felony. The government sought to remove Vaca-Tellez as an aggravated felon on the theory that his conviction for burglary to a motor vehicle with intent to commit a theft therein is an attempted theft offense for the purposes of immigration

law. We have previously defined the term "theft offense" for the purposes of the INA as "requiring the taking of property (exercise of control over property), without the owner's consent, with the intent to temporarily or permanently deprive the owner of the rights and benefits of ownership." *Martinez-Garcia*, 268 F.3d at 465. *See also Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001). Under Illinois law, a person commits theft when he knowingly:

> (1) Obtains or exerts unauthorized control over property of the owner; or
>
> (2) Obtains by deception control over property of the owner; or
>
> (3) Obtains by threat control over property of the owner; or
>
> (4) Obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen; or
>
> (5) Obtains or exerts control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as being stolen, and
>
> > (A) Intends to deprive the owner permanently of the use or benefit of the property; or
> >
> > (B) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

> (C) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

720 ILCS 5/16-1. The Illinois statute for theft thus employs the same two elements we used to define the generic term "theft offense" for immigration purposes: exercise of control over property without the owner's consent; and the intent to deprive the owner permanently or temporarily of the use and enjoyment of that property. Similarly, we have defined "attempt" for the purposes of the INA as the intent to commit a crime combined with a substantial step towards its commission. *Martinez-Garcia*, 268 F.3d at 465-66. Using these formulations of "attempt" and "theft," we concluded in *Martinez-Garcia* that a defendant charged under Illinois law with burglary to a motor vehicle with intent to commit the offense of theft therein had committed the aggravated felony of an attempted theft offense for the purposes of 8 U.S.C. § 1326(b)(2), 8 U.S.C. § 1101(a)(43) and U.S.S.G. § 2L1.2(b)(1)(A). 268 F.3d at 466. That is, the entry into the motor vehicle sufficed as a "substantial step" toward the commission of the intended theft. Martinez-Garcia had been charged under the same Illinois statute at issue here, in virtually identical language:

> [T]he defendant, without authority, knowingly entered a motor vehicle of Silvens Matthews, a 1979 Chevy pick-up, with the intent to commit therein a theft.

268 F.3d at 462. Like Vaca-Tellez, he pled guilty and initially was sentenced to probation. And like Vaca-Tellez,

he violated the terms of his probation and was sentenced to three years' imprisonment when his probation was revoked.

In support of its claim that Vaca-Tellez is an aggravated felon, the government submitted a certified copy of the information charging Vaca-Tellez with burglary of a motor vehicle with the intent to commit the offense of theft therein. The government also provided the IJ with a "Certified Statement of Conviction/Disposition" ("Certified Statement") from the Clerk of the Court in which Vaca-Tellez was convicted. The Certified Statement begins with the filing of the information and tracks the matter through the dismissal of a post-conviction petition. The entries on the Certified Statement are very brief descriptions of what happened on any given day in the case. For example, there are more than a dozen entries for August 6, 2002, each revealing a small piece of the progress of the case, such as "defendant in custody," "public defender appointed," "plea of not guilty," followed quickly by "plea of guilty," and "finding of guilty." Given that there was only one charge pending at the time Vaca-Tellez pled guilty, this evidence (the information and the Certified Statement combined) was sufficient as a matter of law for the IJ to conclude that Vaca-Tellez had been convicted of burglary to a motor vehicle with the intent to commit a theft therein. *See* 8 U.S.C. § 1229a(c)(3)(B) (listing documents or records that constitute proof of a criminal conviction). Vaca-Tellez complains that without a transcript of the plea hearing, we cannot know what conduct the plea involved. That argument is a non-starter, however, because the documents demonstrated that, at a minimum, Vaca-Tellez had committed the conduct charged in the information.

Vaca-Tellez next asserts that the BIA did not distinguish between the generic definitions of theft and burglary in assessing the nature of his conviction. According to Vaca-Tellez, the BIA used the words "burglary" and "theft" interchangeably, without conducting a categorical analysis of Vaca-Tellez's offense of conviction. Under Illinois law, a "person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a). We held in *Solarzano-Patlan* that the Illinois crime of burglary to an automobile with intent to commit theft therein is not "burglary" in the generic sense contemplated by the immigration laws because it does not encompass the unlawful entry into, or remaining in, a building or structure. *Solorzano-Patlan*, 207 F.3d at 874. *See also Hernandez-Mancilla*, 246 F.3d at 1005 (noting that *Solorzano-Patlan* held that a conviction under 720 ILCS 5/19-1 for burglary of a motor vehicle is not a "burglary offense" under § 1101(a)(43)(G) and thus cannot be an aggravated felony on that basis). We also held that burglary to a motor vehicle was not necessarily a "crime of violence" under 8 U.S.C. §1101(a)(43)(F). The INA defines a crime of violence, in relevant part, as an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Solorzano-Patlan*, 207 F.3d at 875; 18 U.S.C. § 16(b). Because Illinois defined the crime so broadly that it encompasses conduct that does **not** involve a

substantial risk of physical force, we remanded so that the IJ could review the charging papers to determine whether Solorzano-Patlan's conduct involved a substantial risk of physical force.

There is no similar problem here. Contrary to Vaca-Tellez's argument, the BIA did not treat "burglary" and "theft" as interchangeable terms but rather relied on our decision in *Martinez-Garcia* to conclude that the Illinois crime of burglary to a motor vehicle with intent to commit theft therein meets the generic definition of attempted theft offense under the INA. Vaca-Tellez complains that he was never charged with, or convicted of, attempted theft. It is true that Illinois does not label the crime Vaca-Tellez committed an "attempted theft" but the labels that individual states apply to crimes are irrelevant to our analysis under federal law. *See Taylor v. United States*, 495 U.S. 575, 592 (1990) (finding that the term "burglary" in the Career Criminal statute "must have some uniform definition independent of the labels employed by the various States' criminal codes."). Our concern is not the labels but whether the elements of the crime as defined by state law meet the elements of a generic definition of an applicable aggravated felony, such as a theft offense. *Eke*, 512 F.3d at 378-79; *Martinez-Garcia*, 268 F.3d at 465 (in determining the meaning of "attempt" under Subsection U, we must apply a generic definition of attempt that is unconstrained by the titles, definitions, or elements assigned to it by the various

States).[3] *See also Lopez v. Gonzales*, 127 S.Ct. 625, 633 (2006) (holding that a state offense constitutes a "felony punishable under the Controlled Substances Act" only if it proscribes conduct punishable as a felony under that federal law).

Vaca-Tellez next argues that the BIA misinterpreted the meaning of "attempt" as defined in 8 U.S.C. § 1101(A)(43)(U). He argues that he was not charged with attempted burglary. Of course, the BIA did not find that he committed attempted burglary. Rather, the BIA determined that the Illinois crime of burglary to a motor vehicle with intent to commit a theft therein met the elements of a generic attempted theft offense. As we noted in *Martinez-Garcia*, we are bound to apply a generic definition of that term, unconstrained by the titles, elements and definitions applied to it by the various states. *Martinez-Garcia*, 268 F.3d at 465. We adopted the Second Circuit's generic definition of attempt as (1) the intent to commit a crime; and (2) a substantial step towards its commission. *Martinez-Garcia*, 268 F.3d at 465-66; *Sui v. INS*, 250 F.3d 105, 115 (2d Cir. 2001). Vaca-Tellez pled

---

[3] Vaca-Tellez also asserts that the "intent to commit theft" was simply a statement of the intent needed to demonstrate that he did not enter the motor vehicle lawfully; the aim of that part of the charge, he alleges, is to exclude lawful purposes and meet the requirement of the burglary statute that the entry be "without authority." But that analysis would render part of the statute meaningless because the law requires both that the entry be "without authority" and that it be "with intent to commit therein a felony or theft."

guilty to a charge that he knowingly and without authority entered into a car with the intent to commit a theft in the car. He satisfied the first part of the attempt formulation by admitting he intended to commit a crime (theft). He met the terms of the second part by conceding that he entered into a motor vehicle without authority, which we construed in *Martinez-Garcia* as a substantial step towards the commission of theft. 268 F.3d at 466. The only differences between the conviction for Vaca-Tellez and the conviction for Martinez-Garcia were the models and owners of the Chevys involved. The charges were virtually identical. We see no reason to treat the meaning of "attempted theft offense" differently in the immigration context than in the sentencing context, and we are therefore bound by the holding of *Martinez-Garcia*. *See United States v. Matamoros-Modesta*, 523 F.3d 260, 264-65 (4th Cir. 2008) (finding that the term "aggravated felony" holds the same meaning in the criminal sentencing context as it does in the immigration setting); *United States v. Figueroa-Ocampo*, 494 F.3d 1211, 1216 (9th Cir. 2007) (same).

We have considered Vaca-Tellez's remaining arguments and find that they are without merit. The petition for review is therefore

DENIED.